Robin D. Myers was indicted in a two-count indictment with murder made capital because it occurred during the course of a burglary, see § 13A-5-40(a)(4), Code of Alabama 1975, and with murder made capital because it occurred during the course of a robbery, see § 13A-5-40(a)(2), Code of Alabama 1975. The evidence in this case showed that the appellant unlawfully entered the home of Ludie Mae Tucker in the middle of the night. He stabbed Mrs. Tucker, and then ran into a bedroom, where he stabbed her houseguest and cousin, Marie Dutton. Mrs. Dutton survived the attack, but Mrs. Tucker died as a result of her injuries. As the appellant was leaving the house, he took a videocassette recorder. He later traded this videocassette recorder for crack cocaine. The appellant testified that he did not kill Mrs. Tucker or stab Mrs. Dutton. He stated that he found the videocassette recorder in some bushes behind his house and that he took it and traded it for cocaine.
The jury found the appellant guilty of both offenses and recommended the appellant be sentenced to life imprisonment without the possibility of parole. The trial court rejected the jury's recommendation and sentenced the appellant to death.
 I
The appellant contends the trial court erred by excusing a prospective juror on the grounds that she was opposed to the death penalty. During voir dire examination, the following occurred:
 "THE COURT: Now, I will go back to the other question about fixed opinions against capital punishment. One prospective juror raised your hand. Tell me your name." *Page 1283 
"JUROR: Y.S.
 "THE COURT: Ms. S., are you telling me that you have a fixed opinion against capital punishment?
 "JUROR S.: Well, I personally have just never wanted to be responsible for someone else's life.
 "THE COURT: Okay. Ms. S., in your judgment, would your views on capital punishment prevent or substantially impair your ability to follow your oath and render a verdict in the case according to the evidence and the court's instructions?
"JUROR S.: I think it possibly could."
(R. 113.)
 " 'The standard for determining whether a prospective juror is disqualified from serving in a death penalty case is whether the prospective juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath." Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841
(1985).'
 "Carroll v. State, 599 So.2d 1253, 1258
(Ala.Cr.App. 1992), aff'd, 627 So.2d 874 (Ala. 1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994)."
 " 'The Eleventh Circuit Court of Appeals held in 1983 in McCorquodale v. Balkcom, 721 F.2d 1493
(11th Cir. 1983), cert. denied, 466 U.S. 954, 104 S.Ct. 2161, 80 L.Ed.2d 546 (1984), that a prospective juror who responded to the death penalty questions, "I don't think I could do it. I really don't," has made it sufficiently clear that she could not impose the death penalty regardless of the evidence. . . .
 " 'The Fifth Circuit in Martin v. Maggio, 711 F.2d 1273 (5th Cir. 1983), even held that the following equivocal responses would establish the necessary predicate for disqualification: "I don't know if I would vote for the death penalty." and "I don't know if I could do it." These are all euphemistic expressions of "no." '
 "Nichols v. State, 624 So.2d 1328, 1336
(Ala.Cr.App. 1992) (quoting Watkins v. State, 509 So.2d 1071, 1073-74 (Ala.Cr.App. 1986), aff'd, 509 So.2d 1074 (Ala. 1987), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987))."
Bush v. State, 695 So.2d 70 (Ala.Crim.App. 1995).
In this case, the juror responded that she thought that her views on capital punishment would prevent or substantially impair her ability to follow her oath and render a verdict in the case according to the evidence and the court's instructions. Defense counsel did not attempt to ask this juror any questions to clarify her beliefs against the death penalty and made only a general objection to the court's excusal of this juror for cause. In light of the cases discussed inBush and cited above, we find that this juror was properly removed for cause by the trial court.
 II
The appellant contends that the trial court erred by refusing to charge the jury, at the sentencing phase of the trial, on the mitigating circumstances of lingering doubt or whimsical doubt. In Harris v. State, 632 So.2d 503, 535
(Ala.Crim.App. 1992), aff'd 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004
(Ala. 1995) this court, quoting Franklin v. Lynaugh,487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988), held:
 " 'Our cases do not support the proposition that a defendant who has been found to be guilty of a capital crime beyond a reasonable doubt has a constitutional right to reconsideration by the sentencing body of lingering doubts about his guilt. We have recognized that some states have adopted capital sentencing procedures that permit defendants in some cases to enjoy the benefit of doubts that linger from the guilt phase of the trial, see Lockhart v. McCree, 476 U.S. 162, 181, 106 S.Ct. 1758, 1768, 90 L.Ed.2d 137 (1986), but we have never indicated that the Eighth Amendment requires states to adopt such procedures. To the contrary, as the plurality points out, we have approved capital sentencing procedures that preclude consideration by the sentencing body of "residual doubts" about guilt. See Ante, [487 U.S. at 173 n. 6, 108 S.Ct.] at 2327, n. 6. *Page 1284 
 " 'Our decisions mandating jury consideration of mitigating circumstances provide no support for petitioner's claim because "residual doubt" about guilt is not a mitigating circumstance. We have defined mitigating circumstances as facts about the defendant's character or background, or the circumstances of the particular offense, that may call for a penalty less than death. [citations omitted]. "Residual doubt" is not a factor about the defendant or the circumstances of the crime. It is instead a lingering uncertainty about facts, a state of mind that exists somewhere between "beyond a reasonable doubt" and "absolute certainty." ' "
Therefore, the trial court properly refused the appellant's instructions on "lingering doubt" and "whimsical doubt." Furthermore, even had there been error, it was harmless since the jury recommended a sentence of life imprisonment without parole.
 III
The appellant contends that the refusal of the trial court to give an instruction on murder as a lesser included offense of capital murder was error. "A lesser-included offense instruction should only be refused in a death case when the evidence adduced at trial could only support a conviction on the crime charged in the indictment." Holladay v. State,549 So.2d 122 (Ala.Crim.App. 1988), cert. denied, 493 U.S. 1012,110 S.Ct. 575, 107 L.Ed.2d 569 (1989). "A charge on a lesser, non-capital offense is required only when there is a basis in the evidence which provides a reasonable theory supportive of the charge. Beck v. State, 396 So.2d 645 (Ala. 1980)." Godboltv. State, 429 So.2d 1131 (Ala.Crim.App. 1982).
After carefully reviewing the evidence in this case, we are of the opinion that there is no evidence in the record that supports a theory pursuant to which the appellant would have been guilty of murder but not of burglary and theft. The evidence clearly shows that these offenses were committed by the same individual. Therefore, the trial court properly denied the instruction. Holladay.
 IV
This court is required by § 13A-5-53, Code of Alabama 1975, to review the propriety of the appellant's sentence of death and to examine the record in this case for plain error. Rule 45A, Ala.R.App.P.
We have reviewed the trial court's findings concerning the aggravating and mitigating circumstances in this case. The trial court found three aggravating circumstances: 1) that the capital offenses were committed while the appellant was under a sentence of imprisonment; 2) that capital offenses occurred while he was engaged in the commission of a robbery; and 3) that the capital offenses occurred while he was engaged in the commission of a burglary. The trial court considered five nonstatutory mitigating circumstances — the appellant's love for his children, his reputation for nonviolence, his substance abuse problem, his show of remorse, and his repentant nature. The trial court also considered the jury's recommendation of life imprisonment without parole. Our review of the record leads us to conclude that the trial court's findings are supported by the record. We find no evidence that the appellant's sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. Our independent weighing of the aggravating and mitigating circumstances convinces us that death is the appropriate and proper sentence in this case.
Furthermore, the appellant's sentence of death is not disproportionate to the penalty imposed in similar cases, considering the crime and this appellant. Weaver v. State,678 So.2d 260 (Ala.Crim.App. 1995), reversed on other grounds. Further, pursuant to Rule 45A, Ala.R.App.P., we have thoroughly reviewed the record in this case, and we find no error that adversely affected this appellant's rights during the guilt or sentencing phase of this trial. The appellant's convictions for these capital offenses and his sentence of death are proper. The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur. *Page 1285