[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 373 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 374 
The appellant, Brandyn Josephe Benjamin, was convicted of capital murder for the killing of Jimmie Lewis. The murder was made capital because the appellant committed it during the course of a first-degree robbery. See §§13A-5-40(a)(2), Ala. Code 1975. By a vote of 10-2, the jury recommended that he be sentenced to death. The trial court accepted the jury's recommendation and sentenced the appellant to death. The appellant filed a motion for a new trial, which was denied by operation of law. See Rule 24.4, Ala. R.Crim. P. This appeal followed.
The appellant raises some arguments on appeal that he did not raise at trial. Although the lack of an objection at trial will not bar our review of an issue in a case that involves the death penalty, it will weigh against any claim of prejudice the appellant may raise. See Ex parte Kennedy,472 So.2d 1106 (Ala. 1985). Rule 45A, Ala. R.App. P., provides:
 "In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review . . . whenever such error has or probably has adversely affected the substantial right of the appellant."
"[This] plain-error exception to the contemporaneous-objection rule is to be `used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'"United States v. Young, 470 U.S. 1, 15,105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting United States v.Frady, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14,71 L.Ed.2d 816 (1982)).
Because the appellant does not challenge the sufficiency of the evidence to support his conviction, a lengthy recitation of the facts is not necessary. However, we have reviewed the evidence, and we have determined that it is sufficient to support *Page 375 
the appellant's conviction. The following summary of the relevant facts, which the trial court prepared, may be helpful to an understanding of this case:
 "The victim, Jimmie Lewis, had gone to Wiregrass Commons Mall about 9:00 p.m. on the night of November 18, 2000, to pick up his wife, who operated a shop in the mall. He had gone to Mrs. Lewis' shop and determined that she was ready to close, and because it was raining outside, he returned to bring the car closer to the mall exit so that Mrs. Lewis wouldn't get wet. Mr. Lewis had parked his car in a remote area of the mall parking lot. The defendant had gone to the mall with the intent of finding a victim to rob. He watched mall security to see how often they made rounds and also parked his car in an area which wouldn't raise suspicion. As Jimmie Lewis approached his car, the defendant appeared and apparently demanded the victim's wallet. A struggle ensued, and the defendant struck the victim several times and shot him twice — once in the chest and once in his leg. The defendant took the victim's wallet and contents and left the scene. The victim was dead when the police and paramedics arrived shortly thereafter. The defendant later related all of the details of the crime to a friend[, Michael Baker,] indicating that he had no remorse for his actions. [Baker] [then] went with his attorney to the District Attorney. The District Attorney arranged for a body wire to be placed on [Baker] so that the police could hear the defendant confess his actions once again to [Baker]. The defendant was then arrested and his room searched. A copy of the Dothan Eagle newspaper account of the crime was found in the defendant's room and later the victim's wallet was also found."
(C.R. 202.) The appellant also made a statement to law enforcement officers in which he admitted that he intended to rob the victim, that he had a handgun with him, and that he and the victim struggled. However, he contended that he unintentionally or accidentally shot the victim during the struggle.
 I.
The appellant's first argument is that the trial court erred in denying his motion to dismiss or remand the indictment and denying his motion for a more definite statement because the indictment allegedly was defective. Citing Apprendi v. NewJersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435
(2000), he specifically contends that the indictment was defective because it did not set forth the aggravating circumstances upon which the State intended to rely. We addressed and rejected a similar argument in Stallworth v.State, 868 So.2d 1128, 1186 (Ala.Crim.App. 2001) (opinion on return to second remand), as follows:
 "Stallworth also argues, in relation to the Ring issue, that his indictment was void because it failed to include in the indictment the aggravating circumstances the State intended to prove. In Poole v. State, 846 So.2d 370
(Ala.Crim.App. 2001), we held that, although Apprendi required that the facts that increased a sentence above the statutory maximum must be submitted to a jury, those facts did not have to be alleged in the indictment. Recently, the Alabama Supreme Court adopted our holding in Poole. See Hale v. State, 848 So.2d 224 (Ala. 2002).
 "Also, the holdings in Poole and Haleare consistent with prior caselaw, which holds that aggravating circumstances do not have to be alleged in the indictment. See Ex parte Lewis, 811 So.2d 485 (Ala. 2001), and Dobard v. State, *Page 376 435 So.2d 1338 (Ala.Crim.App. 1982). Stallworth's argument is not supported by Alabama law."
(Footnote omitted.) Accordingly, the appellant's argument is without merit.
 II.
The appellant's second argument is that the trial court erred in admitting the audiotape of the conversation between the appellant and Baker into evidence.
 A. First, the appellant contends that "[t]he State did not authenticate the tape with the testimony of either party to it. Instead, the State went forward with . . . only the testimony of Sgt. Johnson, who claimed to have monitored the conversation from his patrol unit at a distance from the trailer occupied by Donald Doss and Brandyn Benjamin (R466-8). Since Sgt. Johnson was not in the trailer, seeing and hearing the speakers, he could not meet either test for the admissibility of such recordings."
(Appellant's brief at p. 46.)
"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a), Ala. R. Evid.
 "Sound recordings are admissible `"when a witness testifies they are a reliable representation of the subject sound."' Jackson v. State, 594 So.2d 1289, 1296 (Ala.CrApp. 1991). See also Ross v. State, 555 So.2d 1179, 1182
(Ala.Cr.App. 1989)."
Paige v. State, 621 So.2d 372, 372 (Ala.Crim.App. 1993).
 "`[W]hen a qualified and competent witness can testify that the sound recording . . . accurately and reliably represents what the witness sensed at the time in question, then the foundation required is that for the "pictorial communication" theory. Under this theory, the party offering the item must present sufficient evidence to meet the "reliable representation" standard, that is, the witness must testify that the witness has sufficient personal knowledge of the scene or events pictured or the sounds recorded and that the item offered accurately and reliably represents the actual scene or sounds.'
"Ex parte Fuller, 620 So.2d 675, 678 (Ala. 1993)."
Bates v. State, 669 So.2d 232, 234 (Ala.Crim.App. 1995).
 "`Although the witness authenticating the recording may be a party to the conversation or someone who overheard it, the witness authenticating a tape-recorded conversation as to identification is not required to be someone who either participated in or personally overheard the subject matter of the recording.
 "`In determining whether there is a sufficient showing of accuracy to warrant the admissibility of tape recordings, the governing standard is whether the possibility of misidentification and adulteration is eliminated, not absolutely, but as a matter of reasonable probability, and the trial judge has broad discretion in determining whether the foundation requirements for admissibility are satisfied. . . .'
 "23 C.J.S. Criminal Law §§ 1046(b) at 325 (1989) (footnotes omitted)."
Paige, 621 So.2d at 373. In fact, a witness who listened to a recorded conversation from a remote location may testify as to the recording's authenticity. See Bates,669 So.2d at 234 (holding that a tape-recorded drug transaction between the *Page 377 
appellant and an undercover law enforcement investigator was properly admitted when another law enforcement officer who had monitored and recorded the transaction from a remote location testified that the recording "`fairly and accurately portray[ed]'" the conversation he heard); Paige, supra (holding that a tape-recorded drug transaction between the appellant and informants working for law enforcement authorities was properly admitted when a law enforcement officer who had not seen the transaction but who had listened to and recorded it from a remote location testified that it correctly and accurately reflected the conversation).
Further, one method for authentication or identification is "[identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Rule 901(b)(5), Ala. R. Evid. Finally,
 "`[t]he general rule that a witness may not identify an accused by recognition of his voice, unless he has some basis for comparison of the accused's voice with the voice he identifies as the accused's, is satisfied if the witness acquires his knowledge of the accused's voice after the event testified to by the witness, as well as before that time.' See 70 A.L.R.2d 995, 1002, citing McGraw v. State, 34 Ala.App. 43, 36 So.2d 559
(1948)."
Stemple v. State, 352 So.2d 33, 36 (Ala.Crim.App. 1977).See also Sexton v. State, 349 So.2d 126, 129
(Ala.Crim.App. 1977) (holding that identification was proper, even though the officer "was not familiar with the voice of the appellant when he heard the transmission, [because] he talked with him after his arrest and there-fore recognized his voice").
In this case, Sergeant Douglas Johnson of the Dothan Police Department testified that he investigated this case initially, but did not have any good leads; that the Governor of the State of Alabama and Crimestoppers offered rewards to help solve the case; that, on December 7, 2000, the district attorney contacted him, and they met with Michael Baker and his attorney; and that Baker had pending drug charges, and the district attorney offered him probation on those cases if he solved the murder. He also testified that, that afternoon, he and another officer put a body microphone on Baker; that they tested the equipment and determined that it was working; that he had Baker speak so that he could recognize Baker's voice; that Baker and the appellant had a conversation that afternoon; that he listened to the conversation between Baker and the appellant as it was taking place and recorded it; and that he was not familiar with the appellant's voice at the time the conversation occurred, but he interviewed the appellant later that day and became familiar with his voice; that he listened to the audiotape later and determined that it was a true and accurate representation of the conversation between Baker and the appellant; and that he did not have any doubt that the voices on the audiotape were Baker's and the appellant's.
Even though he was not a party to the conversation, because Johnson monitored the conversation while it was occurring and testified that the audiotape was a reliable representation of the conversation, his testimony established a foundation for the admissibility of the audiotape pursuant to the pictorial communication theory. Also, based on his existing familiarity with Baker's voice and his later-obtained familiarity with the appellant's voice, he could properly identify Baker's and the appellant's voices on the audiotape. Therefore, his *Page 378 
testimony was sufficient to establish the authenticity of the audiotape of the conversation.
 B.
Second, the appellant contends that
 "[t]he failure of the State to put up Baker to authenticate the recording violated [his] right to confrontation of adverse witnesses guaranteed by the Sixth Amendment to the United States Constitution as interpreted by the United States Supreme Court in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004)."
 (Appellant's brief at p. 46.) This argument appears to be simply an extension of his authentication argument, which we have already rejected, rather than an argument based on confrontation principles.
Further, we note that, during the audiotaped conversation, Baker did not make any statements that implicated the appellant. Rather, he simply asked the appellant about what happened and carried on a conversation with the appellant as the appellant talked about the incident. Among other things, the appellant said that he did not have a conscience; that, if he had not done it that night, he might have done it another night and gotten caught; and that he had gotten rid of the evidence. Baker's statements simply put the appellant's statements in context and made them recognizable as admissions. Therefore, even under the broadest definition, Baker would not be an adverse witness against the appellant.
However, to the extent the appellant makes a confrontation argument, his reliance on Crawford is misplaced. The United States Court of Appeals for the Third Circuit addressed a similar situation in United States v. Hendricks,395 F.3d 173, 182^84 (3d Cir. 2005), as follows:
"The District Court also ruled that the United States could not introduce conversations between CI Rivera and various of the Defendants. . . . [T]he conversations that fall within this heading are face-to-face conversations that were recorded by Rivera wearing a taping de-vice provided by the Government. It cannot be disputed that CI Rivera knew of the Government's surreptitious recording and documentation of these conversations. The District Court noted that, '[i]n discussing the "core" class of statements that are considered testimonial, the . . . [Crawford] Court specifically included ". . . pretrial statements that declarants would reasonably expect to be used prosecutorially."' J.A. at 68 (quotingCrawford, 541 U.S. at 51, 124 S.Ct. at 1364). The District Court reasoned that because CI Rivera was working with the Government for the very reason of obtaining evidence against the Defendants for use in the Government's investigation and prosecution, the conversations fell within the rule ofCrawford.
"The District Court's analysis is not without some appeal. Insofar as they contain the statements of CI Rivera, the conversations reasonably could be categorized as involving statements that Rivera expected to be used prosecutorially; obtaining evidence for the prosecution is, after all, theraison d'etre of being a confidential informant.[9] However, the Crawford
decision cites with approval Bourjaily v.United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144
(1987), a case in which the Court rejected a Confrontation Clause objection to the admission of a conversation between a co-defendant and a confidential police informant. Indeed, theCrawford Court referenced Bourjaily as an example of a case in which nontestimonial statements *Page 379 
were correctly admitted against the defendant despite the lack of a prior opportunity for cross-examination. SeeCrawford, 541 U.S. at 58, 124 S.Ct. at 1368 (citingBourjaily, 483 U.S. at 181-84,107 S.Ct. 2775).
"In Bourjaily, the Court addressed the admissibility of admissions made unwittingly by William Bourjaily's co-defendant (and purported coconspirator) to an informant. The Court held that even though Bourjaily had not had a prior opportunity to cross-examine his co-defendant regarding the statements, if the statements were admissible under Fed.R.Evid.801(d)(2)(E) their introduction as evidence against Bourjaily did not run afoul of the Confrontation Clause.Bourjaily, 483 U.S. at 183, 107 S.Ct. 2775. The Court reached this outcome despite the fact that the co-defendant was, due to his invocation of the privilege against self-incrimination, 'unavailable' to testify at trial.Bourjaily, 483 U.S. at 182, 107 S.Ct. 2775. As mentioned, Crawford approved of this holding, citing it as an example of a case that is 'consistent with' the principle that the Sixth Amendment permits the admission of nontestimonial statements in the absence of a prior opportunity for cross-examination. Crawford, 541 U.S. at 56,124 S.Ct. at 1367.
"To be sure, there is a difference between the analysis undertaken by the Court in Bourjaily and the analysis urged by the Defendants here. Specifically, inBourjaily, the Court focused on the unavailability of the coconspirator whose conversation with a confidential informant the Government sought to introduce. In contrast, the Defendants here emphasize the unavailability of the confidential informant. Stated otherwise, although the Bourjaily
Court addressed the Confrontation Clause implications of the admission of conversations with a government informant, it focused on the non-informant half of the conversation.
"During oral argument before us, the United States conceded that it was not seeking to introduce the statements of CI Rivera for their truth and thus correctly argued that the introduction of his statements would present no hearsay problem. See Fed.R.Evid. 801(c). As recognized by theCrawford Court, the Confrontation Clause likewise 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'Crawford, 541 U.S. at 59, 124 S.Ct. at 1369 n. 9;see also United States v. Trala, 386 F.3d 536, 544-45
(3d Cir. 2004) (finding no Confrontation Clause violation where reliability of out-of-court statements was not at issue and where the statements were not introduced for their truth). Therefore, even if we were to hold that CI Rivera's statements within the conversations are themselves testimonial, an issue we need not reach, such an outcome would not preclude the United States from introducing CI Rivera's statements for a purpose other than establishing the truth of the matters contained therein.
"Due to the Crawford Court's reaffirmation ofBourjaily, we conclude that the party admission and coconspirator portions of the disputed CI Rivera conversations are nontestimonial and thus, assuming compliance with the Federal Rules of Evidence, are admissible. See alsoSaget, 377 F.3d at 229-30. Stated otherwise,Crawford presents no bar to the admission of the statements of Defendants or their coconspirators made in the conversations with CI Rivera that he surreptitiously recorded.
"Under these circumstances, we conclude that the Government should be *Page 380 
permitted to introduce the balance of the conversations, i.e., the statements of CI Rivera which, as the Government argues, put the statements of the other parties to the conversations 'into perspective and make them intelligible to the jury and recognizable as admissions.' United States v.McDowell, 918 F.2d 1004, 1007 (1st Cir. 1990) (internal citations and quotations omitted); see also United Statesv. Stelten, 867 F.2d 453, 454 (8th Cir. 1988) (per curiam);United States v. Gutierrez-Chavez, 842 F.2d 77, 81
(5th Cir. 1988); United States v. Murray,618 F.2d 892, 900 (2d Cir. 1980); United States v. Lemonakis,485 F.2d 941, 948-49 (D.C. Cir. 1973).
"We thus hold that if a Defendant or his or her coconspirator makes statements as part of a reciprocal and integrated conversation with a government informant who later becomes unavailable for trial, the Confrontation Clause does not bar the introduction of the informant's portions of the conversation as are reasonably required to place the defendant or coconspirator's nontestimonial statements into context.
"Accordingly, the District Court's ruling to exclude the conversations involving CI Rivera on the basis of Crawford
was error. . . .
"__________________
"Of course, the various defendants and coconspirators, as the other half of the conversational equation, certainly did not realize that their statements were going to be used prosecutorially. And, as explained in the above text, because they constitute admissions unwittingly made, the defendants and co-conspirators' portions of the CI Rivera conversations are clearly nontestimonial statements and are thus not subject to the Crawford rule. See United States v.Saget, 377 F.3d 223, 229-30 (2d Cir. 2004)
 ('We . . . conclude that Beckham's statements to the CI were not testimonial, and Crawford
does not bar their admission.')."
See also People v. Morgan,125 Cal. App.4th 935, 23 Cal.Rptr.3d 224 (2005).
Based on the reasoning in Hendricks, the appellant's statements on the audio-tape were admissions that he certainly did not realize would be used prosecutorially. Therefore, they were not testimonial and would not be barred byCrawford.
Also, the State did not offer Baker's statements during the audiotaped conversation as substantive evidence against the appellant. Rather, it simply used them to put the appellant's statements in perspective and to make them recognizable as admissions. Therefore, Baker's statements do not appear to be testimonial statements that would be barred by Crawford.
Moreover, even if Baker's statements were testimonial, the State did not offer them to prove the truth of the matters asserted therein. Rather, as set forth above, it simply used them to put the appellant's statements in context. Therefore, as the court in Hendricks noted, "[T]he Confrontation Clause likewise 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.' Crawford, 541 U.S. at 59,124 S.Ct. at 1369 n. 9." 395 F.3d at 183.
For these reasons, the United States Supreme Court's decision in Crawford did not bar the admission of the audiotape.
 C.
Finally, the appellant contends that the admission of the audiotape "violate[d] his rights under the Fifth, Eighth andFourteenth Amendments to the United States Constitution and Sections 6 and 15 of the Alabama Constitution *Page 381 
of 1901." (Appellant's brief at p. 47.) He has made vague, conclusory allegations, but he has not established that his rights were violated. Also, our review of the record does not support his contention. Therefore, his argument is without merit.
For the reasons set forth above, we conclude that the trial court properly admitted the audiotape into evidence.
 III.
The appellant's third argument is that the death penalty is unconstitutional.
 A.
[15] First, the appellant contends that "the evolving standard of decency relied on by the United States Supreme Court in Roper v. Simmons, 543 U.S. 551 (2005), applies to the death penalty generally." (Appellant's brief at p. 47.) Because he did not present this specific argument to the trial court, we review it for plain error. See
Rule 45A, Ala. R.App. P.
In Roper v. Simmons, 543 U.S. 551, 578,125 S.Ct. 1183, 1200, 161 L.Ed.2d 1 (2005), the United States Supreme Court held that "[t]he Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." Therefore,Roper applies under limited circumstances and does not apply to the death penalty generally.
 B.
[16] The appellant also contends that the death penalty "runs afoul of the right to due process and equal protection of the laws" and "contravened] the prohibition of cruel and unusual punishment." (Appellant's brief at p. 47.) In Deardorff v.State, [Ms. CR-01-0794, June 25, 2004] __ So.2d __,__ (Ala.Crim.App. 2004), we addressed a similar argument as follows:
 "As for his claim that the death penalty constitutes cruel and unusual punishment, Alabama courts have often held otherwise. E.g., Martin v. State, 931 So.2d 736 (Ala.Crim.App. 2003), and cases cited therein.
"The equal-protection and due-process claims that relate to Alabama's statute and to Alabama's appellate court review are very general and contain no references to any particular portion of Alabama's statute or to the proceedings now under review. Deardorff's failure to include any specific claims of equal protection or due-process violations precludes a finding of plain error.
 "`Our analysis begins with the basic principle that a defendant who alleges an equal protection violation has the burden of proving "the existence of purposeful discrimination." Whitus v. Georgia, 385 U.S. 545, 550 (1967). A corollary to this principle is that a criminal defendant must prove that the purposeful discrimination "had a discriminatory effect" on him. Wayte v. United States, 470 U.S. 598 (1985).'
"McCleskey v. Kemp, 481 U.S. 279, 292 (1987) (footnote omitted).
"The same principle applies with regard to the examination of due-process claims. The United States Supreme Court stated what has become an oft-cited principle, 'A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights.' County Court ofUlster County, N.Y. v. Allen, 442 U.S. 140, 154-55 (1979).
"The State correctly argues that Deardorff has made no attempt to allege or prove a discriminatory intent or a specific due-process violation. His 'boilerplate' *Page 382 
allegations regarding alleged inequities, such as his conclusory statement that 'the entire death penalty structure in this state and in this country is unconstitutional on its face and should be abolished as such' (Appellant's initial brief at p. 21), do not establish that any of his rights to due process and equal protection were infringed."
Similarly, we reject the appellant's argument that the death penalty constitutes cruel and unusual punishment. Also, with regard to his due process and equal protection arguments, the appellant has made only vague, conclusory allegations that he has not supported. Therefore, he has not established that his rights to due process and equal protection were infringed, and he is not entitled to relief in this regard.
 IV.
The appellant's fourth argument is that the trial court erred in refusing to give his proposed penalty phase jury instruction on residual doubt. At trial and during oral arguments to this court, he conceded that the courts have rejected his argument. Nevertheless, he contends that such an instruction was appropriate because, based on his statement to law enforcement officers, the jury could have had a doubt about his intent during the offense.
We addressed and rejected a similar contention in Melson v. State, 775 So.2d 857, 898-99
(Ala.Crim.App. 1999), aff'd, 775 So.2d 904 (Ala. 2000), as follows:
 "`"[C]apital defendants have no right to demand jury consideration of 'residual doubts' in the sentencing phase. Franklin v. Lynaugh, 487 U.S. 164, 172-76, 108 S.Ct. 2320, 2326-28, 101 L.Ed. 2d 155 (1988)."' Rieber, 663 So.2d at 995, quoting Carroll v. State, 599 So.2d 1253, 1271 (1992), aff'd, 627 So.2d 874 (Ala. 1993), cert, denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994).
"In Myers v. State, 699 So.2d 1281
(Ala.Cr.App. 1996), aff'd, 699 So.2d 1285 (Ala. 1997), cert, denied, 522 U.S. 1054, 118 S.Ct. 706, 139 L.Ed.2d 648 (1998), this court stated the following concerning jury instructions on 'residual doubt':
 "`"`Our cases do not support the proposition that a defendant who has been found to be guilty of a capital crime beyond a reasonable doubt has a constitutional right to reconsideration by the sentencing body of lingering doubts about his guilt. We have recognized that some states have adopted capital sentencing procedures that permit defendants in some cases to enjoy the benefit of doubts that linger from the guilt phase of the trial, see Lockhart v. McCree, 476 U.S. 162, 181, 106 S.Ct. 1758, 1768, 90 L.Ed.2d 137 (1986), but we have never indicated that the Eighth Amendment
requires states to adopt such procedures. To the contrary, as the plurality points out, we have approved capital sentencing procedures that preclude consideration by the sentencing body of "residual doubts" about guilt. See Ante, [487 U.S. at 173 n. 6, 108 S.Ct.] at 2327, n. 6.
 "`"`Our decisions mandating jury consideration of mitigating circumstances provide no support for petitioner's claim because "residual doubt" about guilt is not a mitigating circumstance. We have defined mitigating circumstances as facts about the defendant's character or background, or the circumstances of the particular offense, that may call for a penalty less than death, [citations omitted]. "Residual doubt" is not a factor about the defendant or the circumstances of the crime. It is instead a lingering uncertainty about facts, a *Page 383 
state of mind that exists somewhere between "beyond a reasonable doubt" and "absolute certainty."'"'
"699 So.2d at 1283-84, quoting Harris v. State,632 So.2d 503, 535 (Ala.Cr.App. 1992), aff'd, 513 U.S. 504,115 S.Ct. 1031, 130 L.Ed.2d 1004 (D.Ala. 1995), quoting in turnFranklin v. Lynaugh, 487 U.S. 164, 108 S.Ct. 2320,101 L.Ed.2d 155 (1988).
 "Thus, the trial court properly refused to instruct Melson's jury on 'residual doubt' or 'lingering doubt.'"
Moreover, even if an instruction on residual doubt would be appropriate in certain cases, this is not one of those cases. In this case, the trial court specifically and thoroughly instructed the jury on the lesser offenses of felony-murder, murder, manslaughter, and robbery. Thus, the jury had the option of convicting the appellant of any of those lesser offenses if it had any doubts about his intent to kill the victim or about whether he robbed the victim. Because the jury convicted the appellant of the capital offense of robbery-murder, it apparently did not have any doubt that the appellant intentionally killed the victim during the course of a robbery. Therefore, there was not any basis for giving an instruction on residual doubt in this case.
For these reasons, the trial court properly refused to give the appellant's proposed jury instruction on residual doubt.
 V.
For the above-stated reasons, we affirm the appellant's conviction. However, our review of the record indicates that the trial court's written sentencing order in this case does not comply with the requirements of §§13A-5-47(d), Ala. Code 1975, which provides, in pertinent part:
 "Based upon the evidence presented at trial, the evidence presented during the sentence hearing, and the presentence investigation report and any evidence submitted in connection with it, the trial court shall enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in Section 13A-5-49, each mitigating circumstance enumerated in Section 13A-5-51, and any additional mitigating circumstances offered pursuant to Section 13A-5-52."
In its sentencing order, the trial court did not make specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in §§ 13A-5-49, Ala. Code 1975;[1] the existence or nonexistence of each mitigating circumstance enumerated in §§ 13A-5-51, Ala. Code 1975;[2] and the existence or non *Page 384 
existence of any additional, nonstatutory mitigating circumstances offered pursuant to §§ 13A-5-52, Ala. Code 1975.[3]
Therefore, we remand this case with instructions that the trial court amend its sentencing order to comply with the requirements of §§ 13A-5-47(d), Ala. Code 1975. If necessary, the trial court may reweigh the aggravating circumstances and the mitigating circumstances and resentence the appellant. On remand, the trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 42 days after the release of this opinion.[4]
[1] In its order, the trial court found that there was one aggravating circumstance — the appellant committed the offense while he was engaged in the commission of a first-degree robbery, see §§ 13A-5-49(4), Ala. Code 1975. However, it did not make specific findings as to the existence or nonexistence of the remaining aggravating circumstances set forth in §§ 13A-5^t9, Ala. Code 1975. We recognize that this deficiency alone would not require a remand for correction of the sentencing order. See Stewart v. State,730 So.2d 1203 (Ala.Crim.App. 1996), aff'd, 730 So.2d 1246 (Ala. 1999);Fortenberry v. State, 545 So.2d 129 (Ala.Crim.App. 1988), aff'd, 545 So.2d 145 (Ala. 1989). Nevertheless, because we must remand for other corrections to the sentencing order, as set forth herein, the trial court should correct this deficiency as well.
[2] In its order, the trial court addressed each of the statutory mitigating circumstances set forth in §§ 13A-5-51, Ala. Code 1975. With regard to the appellant's age at the time of the crime, see §§ 13A-5-51(7), Ala. Code 1975, it noted: "The defendant lacked one (1) month being twenty years of age at the time of the offense and is 23 now. This circumstance has been duly considered." (C.R. 204.) However, the trial court did not specifically state, and it is not clear from the order, whether it determined that that statutory mitigating circumstance did or did not exist.
[3] In its order, the trial court stated that it would "address other mitigating circumstances alleged at trial," and it did list some other mitigating circumstances. (C.R. 204.) However, it did not specifically state whether determined that those nonstatutory mitigating circumstances did or did not exist.
[4] Because we are remanding for the trial court to amend its sentencing order, we pretermit discussion of the appellant's remaining argument concerning the propriety of the death sentence at this time.
REMANDED WITH INSTRUCTIONS.
McMILLAN, P.J., and COBB, SHAW, and WISE, JJ., concur.
 On Return to Remand
BASCHAB, Judge.
On September 30, 2005, we remanded this case with instructions that the trial court amend its sentencing order to comply with the requirements of §§ 13A-5-47(d), Ala. Code 1975. On remand, the trial court complied with our instructions. We now address the appellant's remaining argument and review the propriety of his conviction and sentence of death.
 I.
The appellant argues that the trial court did not properly weigh the aggravating and the mitigating circumstances. Specifically, he contends that his "youth and lack of prior criminal history, . . . read in the context of his traumatic personal life, make the death sentence in this case a travesty of justice." (Appellant's brief at p. 49.) With regard to the weighing of aggravating and mitigating circumstances, the Alabama Supreme Court explained as follows in Ex parteWaldrop, 859 So.2d 1181, 1189-90 (Ala. 2002):
 "[T]he weighing process is not a factual determination. In fact, the relative 'weight' of aggravating circumstances and mitigating circumstances is not susceptible to any quantum of proof. As the United States Court of Appeals for the Eleventh Circuit noted, 'While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard . . . the relative weight is not.` Ford v. Strickland, 696 F.2d 804, 818 (11th Cir. 1983). This is because weighing the aggravating circumstances and the mitigating circumstances is a process in which 'the sentencer determines whether a defendant eligible for the death penalty should in fact receive that sentence.' Tuilaepa v. California, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). Moreover, the Supreme Court has held that the sentencer in a capital case need not even be instructed as to how to weigh particular facts when making a sentencing decision. See Harris v. Alabama, 513 U.S. 504, 512, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995) (rejecting 'the notion that "a specific method for balancing *Page 385 
mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required"' (quoting Franklin v. Lynaugh, 487 U.S. 164, 179, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988)) and holding that 'the Constitution does not require a State to ascribe any specific weight to particular factors, either in aggravation or mitigation, to be considered by the sentencer').
"Thus, the weighing process is not a factual determination or an element of an offense; instead, it is a moral or legal judgment that takes into account a theoretically limitless set of facts and that cannot be reduced to a scientific formula or the discovery of a discrete, observable datum. SeeCalifornia v. Ramos, 463 U.S. 992, 1008, 103 S.Ct. 3446,77 L.Ed.2d 1171 (1983) ('Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, . . . the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment.`); Zant v. Stephens,462 U.S. 862, 902, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (Rehnquist, J., concurring in the judgment) ('sentencing decisions rest on a far-reaching inquiry into countless facts and circumstances and not on the type of proof of particular elements that returning a conviction does`).
"In Ford v. Strickland, supra, the defendant claimed that 'the crime of capital murder in Florida includes the element of mitigating circumstances not outweighing aggravating circumstances and that the capital sentencing proceeding in Florida involves new findings of fact significantly affecting punishment.' Ford696 F.2d at 817. The United States Court of Appeals for the Eleventh Circuit rejected this argument, holding that 'aggravating and mitigating circumstances are not facts or elements of the crime. Rather, they channel and restrict the sentencer's discretion in a structured way after guilt has been fixed.'696 F.2d at 818. Furthermore, in addressing the defendant's claim that the State must prove beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances, the court stated that the defendant's argument
 "`seriously confuses proof of facts and the weighing of facts in sentencing. While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, see State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert, denied 416 U.S. 943, 94 S.Ct. [1950], 40 L.Ed.2d 295
(1974), and State v. Johnson, 298 N.C. 47, 257 S.E.2d 597, 617-18 (1979), the relative weight is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party.'
696 F.2d at 818. Alabama courts have adopted the Eleventh Circuit's rationale. See Lawhorn v. State,581 So.2d 1159, 1171 (Ala.Crim.App. l990)('while the existence of an aggravating or mitigating circumstance is a fact susceptible to proof, the relative weight of each is not; the process of weighing, unlike facts, is not susceptible to proof by either party'); see also Melson v. State,775 So.2d 857, 900-901 (Ala.Crim.App. 1999); Morrison v.State, 500 So.2d 36, 45 (Ala.Crim.App. 1985)."
(Footnote omitted.) Also, in Bush v. State,695 So.2d 70, 94 (Ala.Crim.App. 1995), aff'd, 695 So.2d 138
(Ala. 1997), this Court stated:
 "`[T]he sentencing authority in Alabama, the trial judge, has unlimited discretion to consider any perceived *Page 386 
mitigating circumstances, and he can assign appropriate weight to particular mitigating circumstances. The United States Constitution does not require that specific weights be assigned to different aggravating and mitigating circumstances. Murry v. State, 455 So.2d 53 (Ala.Cr.App. 1983), rev'd on other grounds, 455 So.2d 72 (Ala. 1984). Therefore, the trial judge is free to consider each case individually and determine whether a particular aggravating circumstance outweighs the mitigating circumstances or vice versa. Moore v. Balkcom, 716 F.2d 1511 (11th Cir. 1983). The determination of whether the aggravating circumstances outweigh the mitigating circumstances is not a numerical one, but instead involves the gravity of the aggravation as compared to the mitigation.'
"Clisby v. State, 456 So.2d 99, 102 (Ala.Cr.App 1983)."
In its discretion, the trial court determined that the aggravating circumstance outweighed the mitigating circumstances. As we explain more fully in Part II of this opinion, the trial court properly considered and weighed the aggravating and the mitigating circumstances, we have independently weighed the aggravating and the mitigating circumstances, and we agree that the death sentence is appropriate. Therefore, we do not find that there was any error in this regard.
 II.
Pursuant to §§ 13A-5-53, Ala. Code 1975, we are required to address the propriety of the appellant's conviction and sentence of death. The appellant was indicted for and convicted of capital murder because he committed the murder during the course of a robbery. See §§ 13A-5-^0(a)(2), Ala. Code 1975.
The record does not reflect that the sentence of death was imposed as the result of the influence of passion, prejudice, or any other arbitrary factor. See §§13A-5-53(b)(1), Ala. Code 1975.
The trial court found that the aggravating circumstances outweighed the mitigating circumstances. It found that the State proved one aggravating circumstance — the appellant committed the capital offense while he was engaged in the commission of a first-degree robbery. See §§13A-5-49(4), Ala. Code 1975. The trial court found that two statutory mitigating circumstances existed — 1) the appellant did not have a significant history of prior criminal activity, see §§ 13A-5-51(1), Ala. Code 1975, and 2) the appellant was nineteen years and eleven months old at the time of the offense, see §§ 13A-5-51(7), Ala. Code 1975. It also made the following findings as to nonstatutory mitigating circumstances:
 "1. Every person who acted as defendant's caregiver died suddenly during his childhood; his mother, his grandmother, his grandfather and his uncle. The Court specifically finds that this circumstance did exist.
 "2. He was traumatized by the death of his uncle whom he found dead in his house. The Court specifically finds that this circumstance did not exist.
 "3. Defendant never received grief counseling despite the repeated deaths of primary caregivers. The Court specifically finds that this circumstance did not exist.
 "4. He was protective of his sister and she trusts him. The Court specifically finds that this circumstance did not exist.
 "5. His father abandoned him during early childhood and adolescence. The *Page 387 
Court specifically finds that this circumstance did not exist.
 "6. His uncle abused him physically and emotionally. The Court specifically finds that this circumstance did not exist.
 "7. He was traumatized by forced separation from his sister. The Court specifically finds that this circumstance did not exist.
 "8. He never had a normal family life and felt he had no home. The Court specifically finds that this circumstance did not exist.
 "9. He got a high school diploma with good grades even though his education was repeatedly interrupted by moves. The Court specifically finds that this circumstance did not exist.
 "10. He had to move repeatedly against his will from state to state. The Court specifically finds that this circumstance did not exist.
 "11. He was an active church member serving as an usher and a choir member. The Court specifically finds that this circumstance did not exist.
 "12. He has had a seizure disorder and has been deprived at time of appropriate medication. The Court finds specifically that this circumstance did not exist.
 "13. He has suffered malnourishment. The Court specifically finds that this circumstance did not exist.
 "14. To certain people he is loving, kind, well-mannered, respectful, creative and helpful. The Court specifically finds that this circumstance did not exist.
 "15. He gave up the right to remain silent when questioned by police officers. The Court specifically finds that this circumstance did not exist.
 "16. He expressed remorse at a point after the killing. The Court specifically finds that this circumstance does not exist.
 "17. He behaved appropriately during his trial. The Court specifically finds that this circumstance does not exist.
 "18. He has a support system which will continue while he is in prison. The Court specifically finds that this circumstance does not exist.
 "19. That society would be protected by defendant's serving a life sentence. The Court specifically finds that this circumstance does not exist.
 "20. The defendant is a human being. Without question the defendant is a human being but the Court specifically finds that this is not an appropriate mitigating circumstance."
(A.C.R. 6-8.) The sentencing order shows that the trial court weighed the aggravating and mitigating circumstances and correctly sentenced the appellant to death. The record supports its decision, and we agree with its findings.
Section 13A-5-53(b)(2), Ala. Code 1975, requires us to weigh the aggravating and mitigating circumstances independently to determine the propriety of the appellant's sentence of death. After independently weighing the aggravating and mitigating circumstances, we find that the death sentence is appropriate.
As required by §§ 13A-5-53(b)(3), Ala. Code 1975, we must determine whether the appellant's sentence was disproportionate or excessive when compared to the penalty imposed in similar cases. The appellant committed the murder during the course of a robbery. Similar crimes are being punished by death throughout this state. See Gaddy v. State,698 So.2d 1100 (Ala.Crim.App. 1995), aff'd, 698 So.2d 1150 (Ala. 1997);Brooks v. State, 695 So.2d 176 (Ala.Crim.App. 1996), aff'd, 695 So.2d 184 *Page 388 
(Ala. 1997); Bush v. State, 695 So.2d 70
(Ala.Crim.App. 1995), aff'd, 695 So.2d 138 (Ala. 1997);Peoples v. State, 510 So.2d 554 (Ala.Crim.App. 1986), aff'd, 510 So.2d 574 (Ala. 1987). Therefore, we find that the sentence was neither disproportionate nor excessive.
Finally, we have searched the entire record for any error that may have adversely affected the appellant's substantial rights, and we have not found any. See Rule 45A, Ala. R.App. P.
Accordingly, we affirm the appellant's conviction and sentence.
AFFIRMED.
McMILLAN, P.J., and COBB, SHAW, and WISE, JJ., concur. *Page 981