WELCH, Judge,
dissenting.
The majority affirms Montana Jordan Windsor’s conviction for first-degree robbery at a CVS pharmacy. I disagree with the majority’s resolution of Issue I, regarding the trial court’s admission of collateral-bad-act evidence, and Issue II, regarding the trial court’s failure to give the jury a limiting instruction about that evidence.
The State’s testimony established that on April 3, 2010, a man armed with a handgun and wearing a hat and gloves jumped across the counter at a CVS pharmacy and asked where the drugs were located. The robber demanded that the pharmacist, Jason Tidwell, put drugs in a zippered bag he brought with him. As Tidwell took prescription drugs from the pharmacy’s safe and put them into the robber’s zippered bag, the robber stated he wanted Oxycontin and he began putting drugs into the bag, too. After the bag was filled, the robber jumped over the counter and ran from the store. He took a variety of prescription drugs with him, Tidwell said: “Morphine sulfate, various strengths. Oxycontin. I think he got every bottle of Oxycontin we had. Duragesic patches, liquid morphine, you know. Demerol.” (R. 105.)
A videotape of the CVS robbery was shown on the television news. A former employer of Windsor’s contacted authorities after he saw the videotape, and he told them that the robber on the video looked like Windsor. Tidwell and two other CVS employees identified Windsor from photographic lineups, and Windsor was arrested.
In addition to the foregoing testimony the State presented substantial evidence regarding a collateral bad act. Specifically, the State presented testimony that on July 16, 2008, Windsor jumped the counter at a Walgreens pharmacy and demanded Oxycontin. He appeared to be under the influence of drugs, and dazed; he was not armed. Pharmacy employees refused to comply with his demand for Oxycontin, and he jumped back across the counter and fled from the store. The State pre *887 sented additional testimony that, after Windsor fled from the store on foot, he ran into a car and fell. The driver of the car testified that she turned her car around after the man struck it; she said that a bystander was urging the dazed man to go to the hospital. The driver further testified:
“And I used to work next door as a security officer at the Houston County Corrections Work Release. And, I guess, when he saw me in uniform, because I was in uniform, I was on my way to work, he started off to run. And I said, ‘[Wlhere he at?’ And about that time he was trying to get his little run going on.”
(R. 148.) She further stated that she caught Windsor, “slammed him on the ground,” and detained him until the police arrived. (R. 143-44.)
Windsor was not charged with attempted theft at Walgreens. However, the officer who investigated the CVS robbery testified that he had also investigated the Walgreens incident, and he said Windsor was charged with obstruction of justice after the Walgreens incident because Windsor initially gave the officer an incorrect name during that investigation.
In spite of the fact that the trial court permitted substantial evidence about the Walgreens incident, including testimony about Windsor’s flight from Walgreens, and about the police investigation of the incident, the trial court refused Windsor’s request that it give the jurors any instruction to limit their consideration of that collateral testimony. The trial court’s actions resulted in reversible error.
First, I do not agree with the majority that the collateral-act evidence was admissible. Collateral-act evidence is generally prohibited, Rule 404(b), Ala. R. Evid., and the well established rule is that a defendant’s guilt or innocence is to be based on evidence relevant to the crime with which he is currently charged. Evidence of collateral bad acts is “presumptively prejudicial because it could cause the jury to infer that, because the defendant has committed crimes in the past, it is more likely that he committed the particular crime with which he is charged — thus, it draws the jurors’ minds away from the main issue.” Ex parte Drinkard, 111 So.2d 295, 296 (Ala.2000). The general rule prohibiting collateral-act evidence protects a defendant’s right to a fair trial because the prejudicial effect of evidence of bad acts or other crimes is likely to far outweigh any probative value that might be gained from admitting the evidence. E.g., Irvin v. State, 940 So.2d 381 (Ala.Crim.App.2005). “Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of jurors.” C. Gamble, McElroy’s Alabama Evidence § 69.01(1) (5th ed.1996). See also Ex parte Billups, 86 So.3d 1079 (Ala.2010).
The majority holds that evidence about the Walgreens incident was admissible as an exception to the general rule of exclusion because it tended to prove both identity and motive. However, when Windsor objected to the admission of the evidence at trial, the State did not argue that the evidence was relevant to prove motive, it argued only that the evidence was relevant to prove identity:
“But they have invoked an identity issue. And I need to know about this prior bad acts [sic]. And it is the robbery of Walgreens. And he was asking for Oxycontin in both cases. It helps prove identity that he has done this before. He has a habit of doing this. And it is relevant. They are very, very similar. And the prior bad acts show the identity can be established through prior bad acts. And identity has been *888 challenged by them, the defense. It is proper.”
(R. 125.)
The majority sets out the relevant legal principles regarding admissibility of evidence to show identity:
“With regard to Rule 404(b) evidence used to prove identity, the Alabama Supreme Court has held: ‘evidence of a prior crime is admissible only when the circumstances surrounding the prior crime and those surrounding the presently charged crime “exhibit such a great degree of similarity that anyone viewing the two offenses would naturally assume them to have been committed by the same person.’” Ex parte Arthur, 472 So.2d 665, 668 (Ala.1985)(quoting Brewer v. State, 440 So.2d 1155, 1161 (Ala.Crim.App.1983)).”
Windsor v. State, 110 So.3d at 882.
I do not believe that the majority applies those principles correctly in this case. In 2008 Windsor climbed over the counter at a Walgreens pharmacy and asked for Oxycontin. That is the only similarity between the Walgreens incident and this robbery. The robber in this case was armed, while Windsor was not armed at Wal-greens; the robber in this case brought a bag with him and demanded “drugs” initially, later demanded Oxycontin, and left with a variety of controlled substances, while Windsor demanded Oxycontin at Walgreens and left empty-handed when Walgreens employees refused to give him anything; Windsor was under the influence of drugs at Walgreens, but there was no testimony that the robber at CVS was intoxicated or impaired. The only similarity between the two incidents is that Windsor and the CVS robber both jumped the pharmacy counter and demanded Oxycontin, but that, alone, hardly satisfies the requirements for the admission of the collateral-act evidence to prove identity — that the two crimes be unique and exhibit a high degree of similarity. To the contrary, as the pharmacist at CVS testified, the controlled substances the robber took from CVS were kept in a safe, in part, as a deterrent for robbery; Tidwell said, “Usually when pharmacies are robbed, those are the things they are after.” (R. 106.) Another pharmacy employee testified that CVS employees are trained about how to react if the pharmacy is robbed. (R. 33.) Pharmacy robberies, obviously, are not unique, and nothing about the circumstances of this robbery and the Walgreens incident were so similar that anyone viewing the two crimes would assume automatically that they had been committed by the same person. In fact, when the trial court sentenced Windsor, it stated: “Mr. Windsor, it’s because of people like you that we have plexi-glass shields between merchants and their customers to prevent injury to their employees and to the general public.” (Sent. R. 6.)[2] Therefore, I believe that Rule 404(b), Ala. R. Evid., precluded admission of the testimony about the Wal-greens incident and that the trial court abused its discretion when it admitted that evidence.
Even if the collateral-act evidence was correctly admitted, I believe reversible error occurred nonetheless because the trial court failed to instruct the jury so as to limit the jury’s consideration of the evidence. The majority agrees that the trial court erred when it failed to instruct the jury about the proper uses for the collateral evidence, but it holds that the error was harmless because, it says, evidence of Windsor’s guilt was overwhelming. I disagree.
*889 Rule 45, Ala. R.App. P., provides, in relevant part, that no judgment may be reversed on the ground of improper instruction of the jury unless, after an examination of the entire cause, it appears to the reviewing court that the error has probably injuriously affected substantial rights of the parties. Windsor presented substantial alibi evidence in this case, and the defense thoroughly called into question the validity of the witnesses’s identification of Windsor as the robber. In light of the conflicting evidence, my review of the entire cause leads me to conclude that the jurors might have had a reasonable doubt about Windsor’s guilt if it had not also been presented with the substantial collateral evidence about the Walgreens incident diverting their minds from the issues and evidence relevant only to this case. Instead, the jurors were erroneously permitted to consider a vast amount of evidence unrelated to the CVS robbery, and they were instructed to consider all the evidence in deciding Windsor’s guilt. For example, the trial court instructed the jury:
“Once evidence has been admitted by the Court, only the jury can consider two essential things about this evidence: First, whether it should be believed; and, second, how important it is to your decision. You make these two decisions with each part of the evidence by using your own common sense as reasonable men and women.”
(R. 279.)
The trial court’s failure to give the jury a limiting instruction as to the collateral-act evidence unquestionably affected Windsor’s substantial rights, as the jurors here were free to consider the collateral-act evidence as proof of Windsor’s bad character, as substantive evidence of Windsor’s guilt in this crime, and for any other purpose the jurors’ “common sense” dictated. Alabama courts have reversed convictions when the limiting instructions given by a trial court did not sufficiently limit a jury’s consideration of collateral-act evidence. See Ex parte Billups, 86 So.3d 1079 (Ala.2010); Marks v. State, 94 So.3d 409 (Ala.Crim.App.2012). Here, the trial court did not limit the use of the collateral evidence at all. Collateral-act evidence is “presumptively prejudicial because it could cause the jury to infer that, because the defendant has committed crimes in the past, it is more likely that he committed the particular crime with which he is charged,” Ex parte Drinkard, 777 So.2d 295, 296 (Ala.2000), and the jury was actually encouraged to evaluate that evidence just as it did the substantive evidence of Windsor’s guilt. The prejudice to Windsor was actual and substantial, and the error cannot be considered harmless.
Therefore, I believe that Rule 404(b), Ala. R. Evid., was violated and that the trial court abused its discretion when it allowed evidence about the Walgreens incident. But even if the evidence had been properly admitted, the trial court’s failure to give any instruction to the jury regarding the permissible use of that collateral-act evidence resulted in reversible error. The errors seriously undermined the fairness of the trial. Windsor’s conviction should be reversed.
For all of the foregoing reasons, I respectfully dissent.

. The transcript of the sentencing hearing is separately paginated, and is designated "(Sent. R.)” in this dissent.